**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | |
|---|---|
| JOHN S. BREEN, *pro se*, | * |
| | * |
| and | * |
| | *     CASE NO.:  RDB 05-156 |
| TERESA J. BREEN, *pro se*, | * |
| | * |
|    Appellants, | * |
| | * |
| v. | * |
| | * |
| BALTIMORE GAS & ELECTRIC, | * |
| | * |
|    Appellee. | * |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

| | |
|---|---|
| In re | * |
| | *     BANK. CASE NO: 02-58017 |
| JOHN S. BREEN | *     Chapter 7 |
| | * |
| and | * |
| | * |
| TERESA J. BREEN | * |
| | * |
|    Debtors. | * |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

| | |
|---|---|
| JOHN S. BREEN, *pro se*, | * |
| | * |
| and | *     ADV. NO.:  02-5817 |
| | * |
| TERESA J. BREEN, *pro se*, | * |
| | * |
|    Plaintiffs, | * |
| | * |
| v. | * |
| | * |
| BALTIMORE GAS & ELECTRIC, | * |
| | * |
|    Defendant. | * |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

**MEMORANDUM OPINION**

This case is before this Court on appeal from the Order of United States Bankruptcy Judge E. Stephen Derby, in which judgment was entered in this adversary proceeding in favor of the Appellee Baltimore Gas & Electric ("BG&E") after a trial held on November 9, 2004 and December 6, 2004. Judge Derby found that there was no willful violation of 11 U.S.C. § 362, the automatic stay provision, and no violation of 11 U.S.C. § 366, the utility service provision. Judgment was entered accordingly on December 6, 2004 and the adversary proceeding was dismissed on December 14, 2004. Mr. Breen is appearing *pro se*. Mrs. Breen is an attorney admitted to practice before this Court and is representing herself. This Court has jurisdiction over the matter pursuant to 28 U.S.C. §158(a), as the appeal arises from a final Order entered by the Unites States Bankruptcy Court for the District of Maryland.

The underlying adversary proceeding related to a dispute over an electric bill that resulted in the power being shut off to Mr. and Mrs. Breen's residence on August 20, 2002 until August 22, 2002, while the Breens were out of town taking their daughter to college. Appellants raise four issues on appeal for this Court's review: 1) Whether the Bankruptcy Court erred in denying Appellants' Motion for Continuance; 2) Whether the Bankruptcy Court erred in concluding that Appellee's violation of the automatic stay was technical, rather than willful, and denying Appellants damages; 3) Whether the Bankruptcy Court erred in concluding that Appellee properly credited Appellants' post-petition payment to the post-petition account; and 4) Whether the Bankruptcy Court erred in concluding that BG&E's refusal of electric service pending full payment of an unbilled deposit was not discriminatory and did not violate 11 U.S.C. § 366(a).

Oral argument is deemed unnecessary because the facts and legal arguments are adequately presented in the briefs and the record before the Court.  *See* Fed. R. Bankr. P. Rule 8012.  For the reasons stated below, the Order of United States Bankruptcy Judge E. Stephen Derby is AFFIRMED.

BACKGROUND

On May 17, 2002, the Breens filed a voluntary petition for relief in the United States Bankruptcy Court for the District of Maryland pursuant to Title 11 of the United States Bankruptcy Reform Act of 1978, as amended.  On the original petition filed, BG&E was not listed as an unsecured creditor.  As a result, the notice sent out by the Bankruptcy Court on May 20, 2002, which provided notice of the Breens' bankruptcy filing and information on various deadlines, was not sent to BG&E.  BG&E contends that it did not receive notice that the Breens had filed for bankruptcy protection until August 20, 2002, while the Breens contend that notice of the Breens' bankruptcy filing was mailed to BG&E by Appellants on July 2, 2002.  Judge Derby noted that the Breens' updated bankruptcy filing, filed July 12, 2002, did list BG&E as a creditor.  However, Judge Derby also noted that both the July 2, 2002 correspondence and the updated filing, listing BG&E as a creditor, were mailed to a BG&E address that was solely for payment processing.

On August 20, 2002, a BG&E representative went to the Breens' residence to inform them that their electricity was going to be shut off as the result of non-payment.  The Breens, however, were not at their residence because they were out of town taking their daughter to college.  A dog-sitter was apparently at the Breens' residence at the time and the BG&E representative told the dog-sitter that the power was going to be shut off.  The Breens received word that their power was being shut off and Mrs. Breen contacted BG&E.

When Mrs. Breen contacted BG&E on August 20, 2002, she reached Dora Hargrove, a customer credit specialist. Mrs. Breen indicated that the Breens had filed for bankruptcy, although the case number for the bankruptcy was not provided,[1] and that their electricity had been shut off. Ms. Hargrove indicated that BG&E's records were not showing that the Breens' account had been coded to indicate that there was a bankruptcy filing. Ms. Hargrove testified that she had not received a copy of Ms. Breen's July 2, 2002 letter, nor a copy of the filing from July 12, 2002, indicating that the Breens had filed for bankruptcy. Neither item appeared in the Breens' account file.

Prior to the August 20, 2002 power shut-off, but after the Breens' bankruptcy filing on May 17, 2002, BG&E sent bills to the Breens. One bill was sent on May 17, 2002[2] and another dated June 19, 2002. The June 19, 2002 bill was for the period from May 15th to June 15th. Part of this bill covered pre-petition charges, while the majority covered post-petition charges. The amount due on this bill was $345.24. The June 19, 2002 bill contained a notice that indicated that the account was being referred to the collection department and that to avoid a service turn off the arrears must be payed.[3] The Breens sent partial payment of $110.62 to BG&E on June 25, 2002 based on a budget plan with BG&E. BG&E sent an undated notice to the Breens indicating that service would be turned

---

[1] Apparently there were two conversations between Mrs. Breen and Ms. Hargrove on August 20, 2002. One of the conversations became very heated and ended with Mrs. Breen hanging up on Ms. Hargrove. It is BG&E's policy to obtain a case number from customers who inform them that they have filed for bankruptcy so that the company can verify that filing has occurred.

[2] This bill covered a pre-petition billing period and indicated that $219.62 was due by June 11, 2002.

[3] The bill also included a number to contact the collection department to arrange payment.

4

off for the account if it was not paid by July 5, 2002. The amount owed was $221.24, which included some pre-petition amounts.

On July 19, 2002, BG&E sent a bill to the Breens, which recognized the amount paid on June 25, 2002, and covered the post-petition period from June 15th through July 18th. The amount owed was $346.86. The July bill warned, next to the word "URGENT," that electric service could be turned off because there was still money owed on the account. The Breens apparently did not contact BG&E about this notice and on August 20, 2002, as discussed above, their electricity was turned off. Late on the afternoon of August 20th, the Breens' former attorney, Mr. Vail Kaufman, contacted BG&E and spoke with Mr. Engler, Ms. Hargrove's manager. Mr. Engler communicated to Mr. Kaufman how much it would cost to have the power reinstated, based on post-petition amounts owed, and Mr. Kaufman relayed this to the Breens. BG&E claims that, as of the date it filed its response to the Breens' appeal, no post-petition obligations had been paid by the Breens. However, on the morning of August 22, 2002, BG&E turned on the electricity to the Breens' residence.

<u>STANDARD OF REVIEW</u>

This appeal is brought pursuant to Rule 8001(a) of the Federal Rules of Bankruptcy Procedure. On appeal from the bankruptcy court, the district court acts as an appellate court and reviews the bankruptcy court's findings of fact for clear error and conclusions of law *de novo.* Fed. R. Bankr. P. Rule 8013; *Butler v.* Shaw, 72 F.3d 437, 441 (4th Cir. 1996); *In re Bulldog Trucking*, 147 F.3d 347, 351 (4th Cir. 1998); *In re Three Flint Hill*, *Ltd.*, 213 B.R. 292, 297 (D. Md. 1997). A factual finding is clearly erroneous "when although there is evidence to support it, the reviewing court on the entire evidence is left with a firm and definite conviction that a mistake has been committed." *United*

5

*States v. United States Gypsum Co.,* 333 U.S. 364, 395 (1948); *see also In re Green*, 934 F.2d 568, 570 (4th Cir. 1991). The district court may affirm, modify or reverse a bankruptcy judge's order, or remand with instructions for further proceedings. *See* Fed. R. Bankr. P. Rule 8013.

## DISCUSSION

The Breens' first contention is that Judge Derby erred in denying their request for a continuance on November 9, 2004, on the morning the trial was scheduled to be begin. The Breens' moved for a continuance on the grounds that they had received discovery from BG&E on the eve of trial. The Breens argued that they had not had time to review the documents produced. However, the vast majority of the documents that were produced were materials that the Breens received from BG&E in the normal course of business, such as invoices. The Breens also wanted, among other requests, to procure their bankruptcy attorney, Mr. Kaufman, to testify. Judge Derby found that there was no prejudice to the Breens in proceeding with the trial.[4] The grant or denial of a continuance is left to the trial judge's discretion. *See Havee v. Belk*, 775 F.2d 1209, 1223 (4th Cir. 1985). This Court finds that there was no abuse of discretion in denying the Breens' Motion for a Continuance. In fact, after hearing evidence on November 9, 2004, the trial was continued to December 6, 2004.

Next, the Breens assert that the Bankruptcy Court erred in finding that BG&E committed a technical violation of the automatic stay, instead of a wilful violation, in turning off their power. "An individual injured by any willful violation of a stay provided by this section shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages."

---

[4] It is also noteworthy that the Breens never filed a motion to compel, nor moved the Court prior to the morning of trial for a continuance based on BG&E's non-compliance with certain discovery deadlines.

11 U.S.C. § 362(h).  Judge Derby held that neither the initial shut off of electricity to the Breens' residence, nor the slight delay in restoring service, constituted a willful violation, pursuant to 11 U.S.C. § 362(h).  To reach this conclusion, Judge Derby carefully analyzed the evidence presented concerning when BG&E received notice of the Breens' bankruptcy filing.  It is clear and undisputed from the facts presented at trial that the Breens neglected to include BG&E in their list of creditors when they initially filed for bankruptcy on May 17, 2002.

BG&E sent bills on May 17, 2002, June 19, 2002, and July 17, 2002, as well as an undated shut off notice indicating a turn off date of July 5, 2002.  The Breens did not seek, however, to contact BG&E or amend their list of creditors to include BG&E until early July.  The updated list of creditors, which included BG&E, was filed with the Bankruptcy Court on July 12, 2002.  Although the evidence presented made it difficult to definitively determine what notice was sent to BG&E in July, Judge Derby found that notice was likely sent to BG&E on July 2, 2002, by Mrs. Breen, and by the Breens' former attorney, who mailed to BG&E the amended list of creditors that was filed with the Bankruptcy Court, on July 12, 2002.  However, as Judge Derby noted, these materials were sent to an address (a P.O. Box) that was used by BG&E solely for payment processing.  Judge Derby noted that the BG&E payment envelope stated on the back, in big black highlighted letters:  "Please do not send correspondence with your payment."  Each bill listed a payment address and another, separate address for inquires.

As the Breens' note, the standard in determining a willful violation of the automatic stay is whether the creditor knew of the automatic stay and the creditor intended the action which constituted the violation.  *See Fleet Mortg. Group, Inc. v. Kaneb*, 196 F.3d 265, 269 (1st Cir. 1999).  The

7

Breens cite *National Union Fire Ins. Co. of Pittsburgh, Pa. v. Broadhead*, 155 B.R. 856 (S.D.N.Y. 1993), which stated that "[t]here is no statutory requirement . . . that one identify the specific division of a company on a bankruptcy notice." *Id.* at 858-859.  In this case, it is not that notice was sent to a general address or that the correct division was not noted on the envelope or correspondence.  Notice was sent to a payment processing address, which was basically a lockbox where checks were received.  Although, once the notice was delivered, it was BG&E's responsibility to distribute the notice to the correct unit, *see Broadhead*, 155 B.R. 858-859, it defies common sense to assign knowledge of the bankruptcy to BG&E on the dates that the notices were sent by Mrs. Breen and her attorney when these notices went to an address that was clearly not designed to handle this type of correspondence.  BG&E published that the payment processing P.O. Box was not for correspondence.

The Breens cite *In re Glenwood Medical Group, Ltd.*, 211 B.R. 282 (Bank. N.D. Ill. 1997) for the proposition that notice sent to a billing office was a sufficient address for a notice of bankruptcy. *See id.* at 285.  *In re Glenwood* also notes that "[t]he purpose of requiring a debtor to list creditors with their proper mailing addresses is to afford those creditors basic due process notice." *Id.*  The Illinois Bankruptcy Court further stated that:  "While the Bankruptcy Code provides no guidance as to what is the proper address of a creditor, it is clear that such an address must provide the creditor reasonable notice of the bankruptcy proceeding." *Id.* (internal citation and quotation omitted).  The Supreme Court has defined reasonable notice as "notice reasonably calculated under all circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Central Hanover Bank & Trust Co.,* 339 U.S. 306, 314 (1950).  Considering all the circumstances in the present case, this Court does not find that the notice provided

was notice reasonable calculated to apprise BG&E of the bankruptcy as of the dates the correspondence was sent (or a few days after, providing a reasonable time for mail delivery). When the correspondence is sent to an address that the senders have been notified is an improper address for correspondence, it cannot be found to be reasonable notice.

Judge Derby concluded that the two day period for which the Breens' electricity was disabled did not constitute a willful violation. The Breens assert that BG&E clearly had notice on August 20, 2002, the day that they turned off the electricity, and that the time it took BG&E to turn on the electricity constituted a willful violation of the automatic stay provision. The time it took BG&E to reinstate the Breens' electricity was not so unreasonable as to covert any technical violation by BG&E of the automatic stay into a willful violation. Even if the time was determined to in some way be unreasonable, as Judge Derby noted, there were apparently post-petition amounts due that had to be addressed before the electricity was restored.[5] There is no evidence to support that BG&E required a pre-petition amount to be paid before it would restore the Breens' electricity and, to the contrary, BG&E corrected its records to indicate that the pre-petition amounts were no longer owed.

The Breens ask this Court to review whether the Bankruptcy Court erred in concluding that Appellee properly credited Appellants' post-petition payment to the post-petition account. However, this determination is not properly before this Court as it does not impact whether there was a violation of the automatic stay. As Judge Derby noted, whether the $110.62 the Breens paid to BG&E on

---

[5] As Judge Derby noted, it is outside of the Bankruptcy Court's jurisdiction to order BG&E to reinstate service when there was a dispute over money owed post-petition. Judge Derby noted that the Bankruptcy Court's jurisdiction was over the automatic stay, 11 U.S.C. § 362, and that the issue of post-petition payment was "post Chapter 7 petition activity by a debtor, which is not part of the bankruptcy administrative function." (Dec. 6, 2004 Hearing Trans. at 150: 4-5).

9

June 25, 2002 should have been credited toward the post-petition amount is an issue concerning post-petition obligations. Judge Derby explained that such a post-petition dispute is not part of the automatic stay issue and, therefore, was not properly before the Bankruptcy Court.[6] This Court agrees and, therefore, whether BG&E properly credited the Breens' $110.62 payment to the post-petition account is not properly before this Court on appeal. Lastly, the Breens argue that the Bankruptcy Court erred in concluding that BG&E's refusal of electric service to the Breens pending full payment of an unbilled deposit was not discriminatory and did not violate 11 U.S.C. § 366(a). The Breens have contended that BG&E does not summarily refuse service by non-bankrupt customers who do make a deposit. Title 11 U.S.C. § 366(a) states:

> Except as provided in subsection (b) of this section, a utility may not alter, refuse, or discontinue service to, or discriminate against, the trustee or the debtor solely on the basis of the commencement of a case under this title or that a debt owed by the debtor to such utility for service rendered before the order for relief was not paid when due.

Judge Derby noted that the record was devoid of evidence concerning BG&E's policies and procedures for non-bankrupt customers. The Bankruptcy Court did not commit clear error in finding that no facts were presented by the Breens related to BG&E's policies concerning deposits for non-bankrupt customers. This type of evidence would certainly be necessary to make the type of discrimination finding, pursuant to 11 U.S.C. § 366(a), requested by the Breens. Therefore, Judge

---

[6] Furthermore, Judge Derby did not make the finding that the Breens' suggest - that the $110.62 was properly credited - because he specifically noted that, based on the evidence presented, there was inadequate evidence in the record to determine whether the $110.62 amount was credited in the recalculation of the post-petition amount owed. (Dec. 6, 2004 Hearing Trans. at 151:8-17.) Judge Derby's finding that there was insufficient evidence to make this determination was not clearly erroneous.

Derby was correct in holding that there was no evidence to support a finding of discrimination in this case.

The Bankruptcy Court's determination that there was no violation of U.S.C. § 362(h) or 11 U.S.C. § 366(a) is affirmed.

## CONCLUSION

For the reasons stated below, the Order of United States Bankruptcy Judge E. Stephen Derby is AFFIRMED.  A separate Order will follow.


August 2, 2005                                         /s/
                                                                  Richard D. Bennett
                                                                  United States District Judge